This matter is Ward v. Philadelphia Parking Authority Good morning, Your Honor. Good morning. May it please the Court, Michael Meehan representing the Philadelphia Parking Authority, Vincent Fennerty, its Executive Director, and James Nye, the Director of the Taxi and Limo Division. We're here on a case in which we're appealing the award of attorney's fees under an ADA case in that we, as an entity, under the very ADA Act, are exempt from application. I haven't seen your argument, but how does any of that help you? This was a result that was achieved through litigation. It was a result that was not achieved until after a couple of years of litigation. After Act 119 was enacted, there was still a couple of years of litigation. The culmination of that litigation was a consent decree, pursuant to which you agreed to do something which was vastly in addition to what you would have been required to do under Act 119. And you're saying, well, we weren't really subject to the act that they were suing us under anyhow, but why does that matter? One, you may or may not be right. I don't know if you're right about that or not, because we haven't, the Second Circuit has decided that issue. We haven't decided that. But nevertheless, don't we get to the fact that they're the prevailing party? They're the prevailing party not because of a judgment, but because of a consent decree, which got them really far and above what the Pennsylvania legislature would have given them by Act 119. Judge, it's also far and above what the ADA would provide. There's only been one. They're really the prevailing party. Well, just because they could not get Congress to do what they should, the ADA is not limitless and also is not a cure-all for everything. Well, that's true. But you're hard-pressed, aren't you, to say that if the case had gone the distance and you had lost, assume that the district court took a different view of it than you did. You'd filed for summary judgment or went to trial and you lost, that this isn't a case in which the action or proceeding was to enforce a charge, as the Rehabilitation Act puts it, or that it's a proceeding commenced pursuant to this chapter, right? I mean, you couldn't come in and say that if it had gone all the way to a merits decision and you'd lost. I agree with that. Okay. So the fact that you chose, you chose for reasons good enough. I'm talking about you, the PPA, right? For reasons good and sufficient to the agency to not take it to the full decision on the merits, but to accept the settlement and to enter into a consent decree, why should we then allow that to resurrect the question that you keep pressing, which is it's really not an ADA or a Rehabilitation Act case at all? Because in order to get the benefit of the fee-shifting provisions of the ADA, doesn't there first have to be a predicate question asked whether or not the defendant in this case, it's even applicable to them? Sure. Yeah. The predicate question was asked. It was asked by the complaint, and there was litigation, and then there was a decision to settle. You seem very upset in your briefing. You say repeatedly at different points, like it's just inexplicable that the district court wouldn't answer the merits question. But you chose to avoid the merits question by settling it. I'm having a hard time understanding why you find it inexplicable for a district court to say, I don't have to get into that question at this point because the case is over on the merits. The merits just aren't in front of me. The only thing in front of me is, did these people get some relief that altered the legal relationship of the party? Help me understand why you think that in the guise of a fee-shifting dispute, you can enter back into the merits dispute that you chose to cut off by entering into a consent decree. Help me understand that, too, because I'm having the same problem. Well, because, Your Honor, unfortunately, my client wanted to resolve a problem that the ADA did not address. They had previously tried to straighten this out in 2006 and actually got legislation passed at that time. Sure. We're aware of all those facts, Mr. Meehan. Well, let me put it to you this way. The PPA is a sophisticated party. This isn't your first rodeo. You're engaged in litigation and you deal with things that you have to deal with. It's a government entity. If you had decided in your own minds, we're certain that we want to settle this thing, but we're also certain that we're not going to pay fees, why didn't you negotiate to say, and we're not paying fees? That's part of the consent decree. That's part of our agreement. Well, part of it would be to prolong the thing because I'm certain that my opposition would not have agreed to not have legalized. Part of the litigation process. But are we going to continue the action and continue to burn the court with all of that? That's the very point, right? That is the point. I'm sorry. No, I was going to ask, isn't the fact that there's at least an issue with respect to whether the PPA would be subject to the provisions of the ADA and Rehabilitation Act, an argument that goes to whether there are exceptional circumstances in this case that make the lawyer unjust? Exactly. I'm of the belief in this case we can make the argument that there's an error of law, that the trial court abused its discretion, and that there's special circumstances that exist that deny the reason for an award. How did the court abuse its discretion? I missed that one. How did the court abuse its discretion by approving, by doing what you asked it to do, approving the consent decree? But, Judge, at least in two instances, in the motion to dismiss and the motion for reconsideration, we put the issue about the applicability right before the court. The court denied it without a word. I don't think anybody is suggesting that you didn't preserve the issue for appeal. You seem to take issue in your reply brief and assert that the DIA is saying, oh, we didn't preserve the issue. But I didn't understand that to be the argument at all. The issue is here. It's before us. It's properly preserved. The question is, do you win on that issue or not? And I'd like you to respond to this language from the Supreme Court's Hensley case. It said, quote, a request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee, close quote. That succinctly makes two points that I'd love to have you respond to. One, how is this not a second major litigation? In other words, an effort to resurrect the merits, what you're doing now. And second, why isn't the Supreme Court's admonition that if you want to deal with fees and you're concerned about that, you should deal with it in the settlement agreement itself? Why isn't that an applicable principle here? Judge, in this particular case, I don't think that we've started a second litigation. Okay? We went through the litigation. And in this interest, they did not, my client decided they want to do the right thing and straighten this out. The only thing we did was we contested the attorney's fees thing. Well, no, that's not the only thing you're doing. The thing that you're doing now is you're asking, in fact, you're demanding a merits-based decision. You're demanding to have an answer to the merits question, were you or were you not covered by the ADA and the Rehabilitation Act in this instance? And were you or were you not in violation of the ADA and the Rehabilitation Act in this instance? You put a fees act hat on it, I mean a fees dispute hat on it, but that's the same thing that's walking around in the courtroom right now, the merits argument, right? Well, yes, but I agree with you, Your Honor. The problem here is the people who are really responsible even for this attorney fee are not in this courtroom. Okay? The PPA gets no federal money, no state money. The fees are all generated by the people we regulate. Those people are exempt under Title III. Those are the medallion owners. That may all be true, Mr. Meehan, but, of course, that is the merits question, right? Those same people tried to intervene in this case, and the district court denied their intervention. And that may be entirely true, and who knows, maybe that was a mistaken decision. I'm having real trouble getting past the fact that you guys made a reasoned decision, a thoughtful, sensible decision on behalf of the Philadelphia Parking Authority to say, Look, let's wrap this thing up. Let's enter a consent decree. Having done that, and having chosen not to make the fee agreement, or such fees might be due in owing a matter of the settlement itself, why are you surprised when they go to court and say we want a fee, much less why should we get into it at this point? You made a decision. Why shouldn't you just live with your decision and pay the fee and go on your way? Judge, with all due respect, I apologize for that and will not use that phrase again. You have previously in your earlier life dealt with ADA fee cases. In fact, when you were a district court judge, you found reason not to award attorney's fees in a particular case. This intellect is so blossomed since then. Well, Judge, I read your case back in 1995, in which you were the author of an opinion in an ADA case regarding services. It wasn't attorney's fees. No, but it was using a, although I think it was a logical decision in the whole thing, because people were being denied services simply because of the thing that whether or not they were residential patients or whether or not they were outside. And Judge Jordan had the same case in Delaware, I believe, in ARC of Delaware versus McConey. But those are years ago and are not Apple here. I think that that issue, as your Honor said, has always been preserved and that's not an issue. But you want to decide why did we shoot ourselves in the foot and settle the case? I wouldn't put it that way because you started off by saying you did the right thing. Why would you say you shot yourself in the foot? I don't know that you shot yourself in the foot at all. I think doing the right thing for the disabled community should be sustained as special circumstances to reduce or eliminate the attorney's fees. Had you not forced them to have how many years of litigation to do the right thing, you wouldn't have to worry about the attorney's fees. But Judge, more to the point, Mr. Meehan, if they have to take you to court and litigate with you to get the result, how could it be special circumstances because you ultimately did quote the right thing, unquote, preventing them from getting a fee? That would turn the fee provision right on its head. But Judge, the reason that the Holt case took so long is, of course, with the legislative process here in Pennsylvania. I used to represent the public authority. I know why the case took so long. I know. So just getting it through the legislature. Let's take, for example, an aside. The ADA provided no answer to this case. We had to go to the Pennsylvania legislature and get a response in order of services to resolve this issue. And while it's not everything that Mr. Gold asked for, it was substantially toward progress in the whole matter. And what you ultimately agreed to in the consent decree goes beyond Act 119, right? Well, it goes way beyond. It went from 15 to 150. Assuming that you have that many. Judge, you're confusing that with acts of the original Act 119 provides for 150, 15 a year for 10 years. Okay? The original act back in 2006 was a total of 50. Okay? So having it vetoed may have actually helped because upon further reflection and getting it through, they tripled the number of vehicles. Well, here's what looks like a fact finding from the district court. Quote, in August 2014, the PPA offered for sale 45 medallions pursuant to Act 119. The 15 medallions that would have gone to WAVES, wheelchair accessible vehicles, under the terms of Act 119 plus 30 additional medallions from the deferred June 1, 2013 and June 1, 2014 issuances. In other words, I read that and what I see is there's a finding of fact that, in fact, things were given in the settlement that go beyond the Act 119 and that it's in process. It's happening. There has been a change between the parties, a legal relationship change. Am I reading that wrong? I don't know that you're reading it wrong. What they were allowed to do is to issue 15 a year for 10 years, okay, which if they decided there weren't a need for them, that there was, they could have not issued them. So where would the community be? Under the Act, those initial 15 for 10 years did not all have to be handicapped accessible, isn't that right? Yes. That is correct. So you went further and agreed that if you were to do the extra 135, they would be limited to those kinds of handicapped accessible. Right. But after analysis of the whole thing, when you're talking about going from zero out of 1,600 to going to maybe 150, which would be 9% of the total fleet, that that was reasonable in order to at least provide some access. Okay. Under the case law, doesn't that go to how much of a fee and not whether there's a fee? I mean, there just seems to be a lot of case law that says prevailing party, that they get something. If they got something, they're a prevailing party. And then if you didn't think it was all that much district court, if you didn't think they won real big, then that goes into how much you give them, not whether they're entitled. Isn't that the way the law works? Yes. I agree with that statement. Your Honors, I've tried to reserve five minutes, and I didn't say it in my opening remarks because we got right into questioning so quickly. If I can reserve two minutes after Mr. Goldberg. I didn't negotiate very well with Steve either. Why don't we do one and a half minutes? That's fine, Judge. Okay. May it please the Court, good morning. My name is Steve Gold, and together with my co-counsel, Julie Foster, we represent the appellees. When the case was brought in 2011, the issue was meaningful access for people who use motorized wheelchairs. Meaningful access to a system of benefits that the parking authority provides. My good friend, Mr. Meehan, focuses only on one part of the settlement agreement, i.e. the numbers. But equally important was we got the benefit of a dispatch system that's going to be people with disabilities are going to be able to call up and say, I need an accessible taxi, and know that it's not going to go through a general system. That is a benefit. Okay. Assume we agree with you, Mr. Goldberg, that the settlement went beyond Act 119, that it changed the legal relationship of the parties. And step back with us for just a moment and answer this, if you would. If a district judge were intent on having a case settled, and I'm not saying that that's what happened here, but stick with me hypothetically, and was reluctant to issue any substantive ruling on the merits, and it put a party in a position where they really, the rational thing to do was to settle. Look, we've got a nuisance suit here. We're not going to be able to get the district court to address our merits. We just need to cut our losses and go. Is it a sensible system to say that in a circumstance like that, they've got to be on the hook for attorney's fees, thus discouraging settlements altogether? To answer your question, I have to put it in context. Cases broke July 2011. I was at pains to take this out of this case and ask you to stick with me on a hypothetical. I'm just asking as a matter of policy, is it good, sensible policy to say to a district court, it's okay for you to just refuse to address the merits and force a settlement? There are ways to make a district court judge face the merits, i.e., as you know, you file for summary judgment, or when 12B6 was denied, you seek interlocutory appeal to see whether they're right, and it's sort of that granted interlocutory appeal that's difficult, but you file for summary judgment either three high opportunities, denied the motion to dismiss, asked for the morale decision, asked for the motion for reconsideration denied, never filed. We were waiting forever for them to file a motion for summary judgment. So that was a hypothetical. Sure, can a district judge sit on for a long time? Sure, we know that, but not forever, and the lower court will have to sometime deal with it, and that's what they should have done. It was very simple. We were expecting a summary judgment at one of three times in this litigation. From 2011, the motion to dismiss was deducted 12-2011, Act 119 promulgated July 2012, they filed for a motion of reconsideration August 2012, a reconsideration, and no one's decided in there as well, I'm sorry, in June of 2012. Do something. If you don't like the merits, do something. They never did that. It's really important for the court to know that a lot of progress has already been made. We don't know the exact numbers of accessible vehicles on the road, but an inquiry article in July sort of suggests 61. We have a dispatch system. Now you can make some phone calls. We don't have all the provisions of the self-consent decree implemented, but a number of them. Mr. Gould, what if we thought that the Second Circuit had it right in the Knoll case, and that the basis, you know, there's just really, there's no basis to think that the PPA has any liability at all. Are we within our power to send this back to the district court and say, you just abused your discretion here because you failed to take into account the relative strength of the party's position? You do not have that issue before you. The only issue before you is whether we're a prevailing party. You are not a second of merits in this. There's no case law on the prevailing party that enables a circuit court to say. Is Mr. Meehan right that you are taking the position that they didn't preserve their issue about whether they were subject to the issue? No, I'm not. I understand. I think that issue is preserved on a merit appeal, not a return fee. The only issue before this court is whether plaintiffs are a prevailing party. And I promise you, as a former district judge, you do not want to be returning to the merits on a third-of-fee position. Let me make sure I understand what you're saying. Even if we said you're a prevailing party, the size of the fee is a matter for the discretion of the district court, right? That has been settled already. Well, the fee has not been settled. That's why we're arguing about it. The size of the fee has not been settled. So the fee is a matter of discretion with the district court, right? Correct. Okay. So the subject to abuse of discretion review, correct? Correct. So theoretically, we could say we think you abused your discretion here, and the reason we think you abused your discretion is you failed to take account of the relative strength of the party's positions. Is that outside the bounds of what we can do? Yes. That part is outside, because on a prevailing party, you are restricted by the four corners of that consent decree. Where do you get that, Mr. Gold? Otherwise, you're reaching the merits when having a third-of-fee petition, including the discretion of the amount of the award. What are we to do with cases like Texas Teachers and others that specifically talk about looking at the relative strength of the party's positions? Had they appealed the amount, that might be the issue for you. They never appealed the amount. Their appeal is that they're appealing the fee. They're appealing the fee. There's nothing in the state briefs that mentions that the district court abused its discretion awarding the amount. The only issues that they have raised are exemption, which they're dead wrong on, under Congress. I mean, Congress has said every public entity is subject to the ADA. That's the difference between 504 and the ADA. And second, they're dead wrong on whether or not they're discriminating. What they are confusing is the issue of exemption and reliability. And you raised the question about New York. New York's system is entirely different than Philadelphia. One of the results is we never finish discovery. But New York City is almost exclusively a health system. You go outside, you raise your hand, a cop comes. Philadelphia is a dispatch system. Philadelphia emails people to get a taxi, except in a very limited area of center city. You use the telephone and you call the dispatch service. It's that service. Well, if we're going to get into NOAA, I thought that the basis of the Second Circuit's decision there was the language of the regulation itself. Licensing. Correct. Yeah, which says that it's not a – if I understood it right, it was saying that it specifically says, hey, the licensing authority is not on the hook here. And that there's, in fact, the Department of Justice manual that says the same thing. The reason I bring up the difference between New York City and Philadelphia is that we preserve – one reason they never – they did not file for summary judgment, and I think, according to the gentleman, is we have always argued that there are other violations under the ADA other than the licensing. That's one provision of the ADA. The methods of administration provision that's discrimination under the ADA says – and it's very fact-based. Were those covered in your complaint? Oh, yeah. Well, yes. Paragraph 66 of the complaint, the second point, talks about dispatching. So what do we make of this language from the regulations themselves? 28 CFR 35.130B6. The programs or activities of entities that are licensed or certified by a public entity are not themselves covered by this part. It looks like – That is the licensing provision of the ADA. There are three or four other sections under those same federal regulations that require that a Title 20, the Philadelphia Parking Authority, not discriminate. And the one that we kept pushing, both in negotiations and before the court, was the PPA violates the methods of administration because of the effect of what they have done by not having a dispatch service that would provide for people with disabilities, discriminates. Second – let me give you the second and the third. That totally takes it out of the licensing context. There is no reason that the PPA could not, cannot right now, incentivize existing taxi cab owners that own station wagons and other vans, not new ones under Title III in the licensing, nothing new in licensing, to say that we will provide you X amount of money. We want more accessible taxis. We have to do it under the ADA. We'll provide you more money. Convert some of your existing taxis. Not that difficult. And particularly our methods of administration argument was really strong, is really strong, because the PPA requires existing taxis to do certain things that affect accessibility. For example, when we go in a taxi, every taxi, there's a grab bar, a handle, right? There's nothing that matches. There's nothing in Act 119 or any of the requirements that the PPA mandates, but they're all there. So there are agreement numbers there where people are going to grab a hold and going to be able to sit down. The PPA could have also said that every existing taxi and a van, a station wagon and a van, that opens side door, of which there are many, has a permit. I'm not sure how we got here. Yeah. These are interesting. Because it's more than just licensing of new taxis. It's just a method of administration that permits the parking authority to make the system accessible. And the system accessible is not just purchasing of new. So you think NOLS, they argued it wrong up there? I know. I was at council. I was at ex-officio council with them on that. They argued for 100%. They argued that the licensing permitted them to do it, and no matter how much we asked them to argue, other provisions of the ADA couldn't convince them. Well, it wouldn't matter. If their authority is that much different than our authority, it wouldn't matter that much anyhow. It is. Well, the system is different. The authority may be a public. They're both public entities. But the system is different. The reason I started in response to Judge Jordan is that people in Philadelphia, primarily, 50% or more, is totally over the telephone. That is not the same system as New York. And because these two systems are different factually, the method of administration argument for Philadelphia, we believe, was much, much, much stronger. The licensing is a different issue. I mean, I don't think the second circuit was right on that.  But we always thought we would win under the ADA, and that's the method of administration argument. Would you acknowledge that under Farrar, the special circumstances analysis can reach a point where even if somebody is a prevailing party, they're just not entitled to it? Sure. Absolutely. In some of those cases, I mean, I never quite understood what they meant by what the courts have meant by special circumstances. But clearly, those lawsuits are frivolous. There were no nominal damages. It suits that. True. But the nominal damages are injured. Yes. But you don't get much. You don't get much. Well, right now, we have about 61 accessible taxis on the road. We brought this because we had zero, right? Eventually, we'll have at least 150, maybe 350, if the parking authority requests another additional increase in medallions. And with all due respect to my good friend and colleague, this is not an act of charity on the PPA's part for poor, disabled people under the ADA. They have wanted to increase the number of medallions for 15, 20 years. We haven't had an increase in medallions. The only way they were able to do that was by using the disability community to get accessible taxis. They weren't going to get them any other way. And the critical timing and why they entered your question, Judge McKee, the settlement agreement was they were not getting the support of the disability community when the PPA originally said 15 accessible. But my client said, no way, that's like zero. So the push on the shelf came by how many, and as soon as they signed the consent decree, before Judge Jones even approved it, my clients went up to Harrisburg with them and got them up to 150 accessible taxis. That was a compromise we were ready to make. Very important that both parties compromise on this. One more, you betcha. But the defendants also, and we gave up that right by compromise, but the defendants gave up the opportunity to appeal the merits of this case. That was part of the compromise. We didn't say in the section that we're not prevailing parties and you can now return to the merits. The settlement under absolutely traditional prevailing party law is that the benefits that the plaintiffs achieved are part of that consent decree. What both parties gave up were implicit in there, but they had given up both the right to appeal and the right to deny accessible taxis. And Mr. Meehan, with all due respect, admitted in this recording, one of the arguments, that yes, the plaintiffs have received some benefits that they sought to achieve. And that's where this analysis showed up. I don't think he's contesting that now. I don't think he was contesting that. Well, but on the prevailing party, as long as we achieve, as Judge Jordan articulated, the different standards, some benefits change the legal relationship and retain the judicial imperature for enforcement. All of which we've done. That is politically prevailing party case law. Right. Thank you, Mr. Jordan. Your life's not for a lot of benefit, Mr. Meehan. The minute hasn't hold you to that. Thank you very much. You've bargained out of me. Thanks. Mr. Meehan, let me begin by saying I thought you had conceded the reasonableness of the fee. That wasn't an issue. Is that right? We have conceded the reasonableness. We don't think that there should be any fee. Because this in particular case is, we've gone so far in the special circumstances. When are you ever going to, the fact is you're never going to be faced with this case again. Where an exempt party comes in and solves a problem that the government provided no resolution to. And Judge Jordan had it exactly right when he talked about the, this may be the mythical unicorn in attorney fee cases. We keep hearing that there may be a case where attorney fees should be reduced or eliminated. Because this may be the case. Well, you just typed the word reduced in there again. That's why I asked you my question. I thought you were agreeing they were reasonable. If they're reasonable, why would we want to reduce them? Because I don't think, I think there are special circumstances in this case. What the defendant did in this case to resolve an issue. The special circumstances, as far as I understand it, goes to whether or not one is entitled to attorney's fees. You're saying it also goes to whether the reasonableness inquiry of attorney's fees. Yes, I do. I think. Even where it conceded reasonableness. Yes, I do. Okay. And really, as of today, the parking authority is no more subject to the ADA than they were before. Well, that sort of assumes the end of the merits question, right? Which never got decided because it got settled. But, Judge, if we get sued again under the ADA for something like this, then this court will be instructing us not to settle. I don't think we'll be instructing you not to settle. We'll be telling you you're free to do what you think is right for the people of Philadelphia, whose interests you represent as a public agency. And if you choose to settle because you think that's right, that's up to you folks. If you choose not to settle and fight on the merits, that's up to you folks. Right? Thank you. Thank you. Thank you.